BYRON W. HENDERSON

*v.*

MARY McKERNAN.

*Filed at Ottawa, June 19, 1894.*

1. MISTAKE—*reforming a deed—failure of defense.*  Where the only
·defense to a bill in chancery for the reformation of a deed for a mistake
in the description of the land fails in the proofs, a decree may be en-
tered correcting the deed.

APPEAL from the Circuit Court of Livingston County;
the Hon. THOMAS F. TIPTON, Judge, presiding.

Messrs. H. N. RYON & SON, for the appellant.

Messrs. REEVES & BOYS, for the appellee.

Mr. JUSTICE BAKER delivered the opinion of the Court:

On March 19, 1891, appellant, Byron W. Henderson and
his wife, Augusta E. Henderson, executed a warranty
deed to the appellee, Mary McKernan, for sixty acres of
land lying in Livingston county, Illinois.  A mistake oc-
curred in the description of the land sought to be conveyed
by the execution of that deed.  The error was discovered,
but Byron W. Henderson, appellant, refused to execute a
deed correcting the mistake.  A bill was filed in the Liv-
ingston County Circuit Court by Mary McKernan, the
grantee in said deed, to correct the same.

There was a hearing of said cause in said court, which
resulted in a decree in favor of complainant in said bill,
ordering that a deed correcting the error be made.  From
this decree the principal defendant, Byron W. Henderson,
appealed to this court.

The sum and substance of the defense in this case is that
Byron W. Henderson, appellant, made a bargain with his
wife that he would convey to her this land, as a means of

making her contented and willing to return to his home and live with him as his wife, they having separated about the first of March before that time; and that the deed was made to Mrs. McKernan, who was to convey it to Mrs. Henderson; that Mrs. McKernan was a conduit in passing the title from Byron W. Henderson to his wife; and that Mrs. Henderson had promised him that if he would do this she would return to his home and live with him as his wife. She did not return to him and has not lived with him hitherto, and, therefore, he denies the right of complainant to have this deed corrected.

The evidence in this case does not warrant such conclusion. The wife of appellant, Byron W. Henderson, is the daughter of complainant, Mary McKernan. Mrs. Henderson's father died twelve or fifteen years ago, leaving an estate for division among his heirs, and Mrs. Henderson received from her father's estate about one thousand dollars. It likewise appears that Mrs. McKernan had on different occasions given to her daughter, Mrs. Henderson, some money; and also that Mrs. Henderson kept boarders, and made some money in that way; and the uncontradicted testimony of Mrs. Henderson is that her husband did not supply the food for these boarders, but that she maintained the family table herself, through her own exertions in keeping boarders.

It further appears from the evidence, that for some reason or other a certain piece of property consisting of a house and lot in Streator, which had been purchased by appellant, had been conveyed to his mother, whose name is Mrs. Rainey. This property was worth according to the evidence from fourteen hundred to sixteen hundred dollars. Considerable of the property that Mrs. Henderson had received from her father's estate, and considerable of that which had been given to her by her mother, and considerable of that which she had earned in keeping boarders was invested in the house and lot above mentioned, and in other real es-

tate and property, the title of which was vested in appellant. Appellant had likewise borrowed various sums of money from the complainant in this cause, Mrs. McKernan, his mother-in-law, for which she held his note and mortgage for $568.00.

. Appellant and his wife were not living happily together. Appellant's version of the cause of their difficulty was, that the wife was discontented and dissatisfied that her property should be entirely out of her hands, and that she should have nothing to show for it in any manner. Accordingly, on the 10th day of March, 1891, they and their respective attorneys met in the office of H. N. Ryon & Son, in Streator, and made some deeds back and forth, and some mortgages. The result was, that the house and lot in Streator above referred to was deeded to Mrs. Henderson. Appellant claims that he made the deed to his wife, under promise that she would go home and live with him. His wife denies that statement entirely, and says that the property was deeded to her for the money that her husband owed her.

Whatever was their bargain, it is admitted on all hands, that the title to the house and lot in Streator was then and there vested in Mrs. Henderson, subject to a mortgage. Some days afterwards appellant went to see his wife who was then residing with her niece, Mrs. Harriet Kleiber, in Streator. He proposed to his wife an exchange of property. He asked her to convey this town property to his mother, Mrs. Rainey, and said that he would convey the farm land, now in question, to his wife. Appellant gave to his wife, as the reason for this exchange, that his mother, Mrs. Rainey, lived in Streator, and could collect the rents from the town property, and look after it with less trouble to herself, and would much prefer it. There was a mortgage on the farm land in controversy for six hundred dollars, of which one hundred dollars had been paid, leaving a mortgage debt of five hundred dollars and some interest,

owing to one Fetzer. Mrs. McKernan, the appellee, held, as already stated, the note and mortgage of appellant for $568. The debts to Fetzer and to appellee amounted to one thousand and sixty-eight dollars and some interest. Mrs. Henderson at first refused to make this exchange, but after some talk it was agreed between Mrs. Henderson and her husband that they would make the exchange upon these terms, viz.: That the deed to the farm land should be given to the complainant in this cause, Mrs. McKernan; that she, Mrs. McKernan, should assume the mortgage debt owing to Fetzer, and likewise surrender her note and mortgage for five hundred and sixty-eight dollars to appellant; that Mrs. McKernan should first get out of the land what was owing to her, to-wit: Five hundred and sixty-eight dollars and interest, and five hundred dollars of debt, which she would assume, due to Fetzer, and whatever was left, after making Mrs. McKernan whole in that way, should be given to Mrs. Henderson in compensation for the house and lot that she should yield up. This bargain was made some time between the 10th of March and the 19th of March, 1891, at the residence of Mrs. Kleiber in the city of Streator. Mrs. Kleiber was present and heard the bargain, and swears to it in this cause; so does Mrs. Henderson. On the other hand, appellant denies having ever made this bargain at all, and declares that the whole story is false from beginning to end, and that no such conversation occurred. These three are the only witnesses in regard to the bargain claimed to have been made at that time; but there are other facts shown which leave no reasonable doubt of the truth of the claim that such bargain was made. Mrs. Henderson swears that she agreed to that bargain on condition that her mother, appellee, would consent to it; that she with her husband went from Streator to the station of Kernan (about five miles east of Streator), and there saw Mrs. McKernan, and told her of this proposed trade, and that she consented to it, and that they

came back to Streator, and on the 19th day of March consummated it, by Henderson and his wife executing the deed to Mrs. McKernan, and by Mrs. McKernan surrendering her note and mortgage for five hundred and sixty-eight dollars to Henderson, and by Mrs. Henderson and her husband conveying the house and lot in Streator to Mrs. Rainey, the mother of appellant; that all of these conveyances were made, appellant admits; that Mrs. McKernan surrendered her note and mortgage for five hundred and sixty-eight dollars to him, he likewise admits. When pressed on the witness stand to know what it was he gave to Mrs. McKernan in payment of that note and mortgage, if it was not this farm, he acknowledges that he paid her nothing, and then makes a claim, which under the then existing family relations of the parties is very improbable and unreasonable, that Mrs. McKernan made him a present of this note of five hundred and sixty-eight dollars and the mortgage. Appellee, Mrs. McKernan, swears that she consented to the bargain above mentioned, and surrendered the note and mortgage under that agreement.

Counsel for appellant urges the proposition that Henderson made this deed to satisfy his wife, under her promise that she would return to and live with him. But upon that question Mrs. Henderson swears positively that she told him at the time the bargain was made that she would not go back and live with him if she lost everything she had. Mrs. Harriet Kleiber swears that she was present and heard Mrs. Henderson so tell him. We are wholly unable to find from the record that either appellant or any other witness testifies that either at the time the bargain was made or suggested at the residence of Mrs. Kleiber, in the city of Streator, or at any time thenceforward, up to and including the 19th of March, 1891, the day the deed was executed and the arrangement carried into effect, the wife of appellant promised, directly or indirectly, that she would go back to her husband or live with him. Nor is

any such testimony pointed out or mentioned in the brief and argument of appellant.

Then, again, on the day the deed which is here sought to be corrected was made—the 19th day of March, 1891,— at the office of John H. Shay, Esq., in Streator, there were present appellant, his wife, appellant's mother, Mrs. Rainey, Mrs. McKernan and Mr. Shay. Mrs. McKernan, Mrs. Henderson and Mr. Shay all swear that when Mrs. Rainey, mother of appellant, was trying to obtain a deed from Mrs. McKernan back to Henderson's wife, and actually succeeded in having one drawn and executed, but not delivered, she, Mrs. Rainey, in pressing that matter, asked leave to take the deed from Mrs. McKernan to Mrs. Henderson, her daughter, and mail it for record, but appellee refused to permit it, and ordered it to remain with her attorney, Mr. Shay, until she gave further orders in the premises; whereupon appellant—so swear all three of these witnesses—said to his mother, in substance: "No, Ma, that is none of our business. If Mrs. McKernan wants Gussie (*i. e.*, Mrs. Henderson) to have the land, she will deed it to her; if she does not, it is none of our business." True it is, appellant denies this, and so does his mother, Mrs. Rainey—or, rather, she says she did not hear that statement made; but, treating her denial as positive, there are three witnesses who swear that he did thus state, against two who deny it. This is a clear indication of the fact that he knew what he was doing when he was deeding the property to Mrs. McKernan, appellee.

Then, again, a little later, in further recognition of the ownership of Mrs. McKernan, appellant leased from her forty acres of the same premises here in question and went into possession under that lease, and has occupied said forty acres ever since. As we have already seen, on the same day that the deed from Henderson and his wife was made and delivered to Mrs. McKernan, a deed was made out by Mr. Shay, running from Mrs. McKernan to Mrs.

Henderson, for this same property. Mrs. McKernan, appellee, Mrs. Henderson and Mr. Shay, all swear that deed was made at the solicitation and by the direction of Mrs. Rainey, mother of appellant. Appellee, Mrs. McKernan, signed the deed. She is an old lady, seventy-one years of age. She swears, in substance, that Mrs. Rainey was urging that deed to be made, and Mr. Shay drew it and she signed it, and when Mrs. Rainey sought to have it delivered by being placed upon record, she peremptorily refused to allow it to be done, and told her attorney, Mr. Shay, to keep that deed for her until she called for it. Mr. Shay corroborates her in this, and says that he did keep it until the next day, or some other time, and until Mrs. McKernan came and got it herself. It is not claimed that said latter deed was ever delivered to Mrs. Henderson. Mrs. Henderson says herself, that she knew that it ought not to be given, that she did not want it, that her mother had not yet received her money out of the farm; neither had any provision been made for the Fetzer mortgage, and that she did not want the deed, knowing that she had no right to it.

The value of the land in controversy, as established by the evidence, seems to be about thirty-five dollars per acre for forty acres of it, which would be fourteen hundred dollars, and about fifteen dollars per acre for the remaining twenty acres, or $300, said twenty acres being timber land so full of ravines, and so rough as to have no practical value above the timber that is on it. The total value, then, of this land, is about seventeen hundred dollars. Against this value of seventeen hundred dollars is the Fetzer mortgage of five hundred dollars and some interest thereon, and Mrs. McKernan's claim of five hundred and sixty-eight dollars, or a total of $1,068 and some interest, which must be gotten out of said land under the arrangement that was made and agreed to, before anything can come to Mrs. Henderson. If the full value is gotten out of the land, it will leave Mrs.

Henderson only about six hundred dollars, which, under the evidence, is probably very much less than the amount of her own money that her husband invested in property purchased by him in his own name, and in that of his mother. Other portions of the evidence, and various minor matters are discussed by counsel. We do not consider it necessary to consider them in detail. Suffice it to say, that in our opinion they do not affect the substantial merits of the cause.

The decree entered in the Circuit Court was just and equitable, and it is affirmed. *Judgment affirmed.*